1 | Randall T. Garteiser (CA State Bar No. 231821)
2 |     rgarteiser@ghiplaw.com
  | Christopher A. Honea (CA State Bar No. 232473)
3 |     chonea@ghiplaw.com
4 | GARTEISER HONEA
  | 95 Third St., Floor 2, San Francisco, CA  94103
5 | 119 W Ferguson, Tyler, TX  75702
6 | Tel: (888) 908-4400

7 | Attorneys For Plaintiff,
8 | Battery Conservation Innovations, LLC

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| BATTERY CONSERVATION INNOVATIONS, LLC, | Case No. 8:22-cv-02231 DOC (DFMx) |
|---|---|
|  | The Honorable David O. Carter |
| Plaintiff, |  |
| v. | **OPPOSITION TO MOTION TO DISMISS (Dkt. No. 18)** |
| TARGUS US, INC., |  |
|  | Hearing Date: April 10, 2023 |
| Defendants. | Time: 8:30 a.m. |
|  | Location: 10A |

# **TABLE OF CONTENTS**

I. INTRODUCTION. ........................................................................................... 1

II. LEGAL STANDARD. .................................................................................... 1

    A. Legal Standard for Bringing a Motion to Dismiss in this District. ................ 1

    B. Legal Standard for Pleading Patent Infringement. ........................................ 1

    C. Legal Standards for Pleading Direct Infringement. ...................................... 2

III. ARGUMENT. .................................................................................................. 2

    A. Defendant's Motion Fails Because Plaintiff Agreed to Remove Allegation of Indirect Infringement. ................................................................ 2

    B. The Court Should Deny Defendant's Rule 12(b)(6) Motion Due to Defendant's Failure to Comply With Local Rule 7-3. ................................... 3

    C. Plaintiff's Complaint Meets the Pleading Standards. .................................... 6

    D. Plaintiff Adequately Pled Targus' Direct Patent Infringement...................... 7

    E. The alleged *IPXL* Legal Issue Contains Underlying Factual Issues Making It Improper to be Decided at the Pleading Stage. .......................... 10

IV. CONCLUSION. ............................................................................................ 12

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)..................................................................2, 7

*Battery Conservation Innovations, LLC v. Corsair Gaming, Inc.,* Case No. 21-cv-07322-JST, Dkt. No. 42, *2 (J. Tigar) (N.D. Cal. April 14, 2022).....................6

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).......................................................1, 6

*Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007)..................................................................7

*IPXL Holdings, LLC v. Amazon.com, Inc.*, 430 F.3d 1377, 1384 (Fed. Cir. 2005)..................................................................................................................11

*Mosaic Brands, Inc. v. The Ridge Wallet LLC*, No. 2:20-cv-04556-AB (JCx), 2020 WL 5640233, at *3 (C.D. Cal. Sept. 3, 2020).....................................................1, 4

*Nalco Co. v. Chem–Mod, LLC*, 883 F.3d 1337, 1350 (Fed. Cir. 2018) ....................2, 9, 12

*Rembrandt Data Techs., LP v. AOL, LLC*, 641 F.3d 1331, 1339 (Fed. Cir. 2011)..................................................................................................................11

*TMI Sols. LLC v. Bath & Body Works Direct, Inc.*, 2018 WL 4660370, at *9 (D. Del. Sept. 28, 2018)..........................................................................................2, 7, 12

**Statutes**

35 U.S.C. § 271 ...............................................................................................................2, 6, 7

## I. Introduction.

Now comes Plaintiff Battery Conservation Innovations, LLC ("Plaintiff") in opposition to Defendant's Motion to Dismiss pursuant to Rule 12(b)(6).

## II. Legal Standard.

Defendant's Motion raises three issues: (1) the standard for filing a motion in this District; (2) the pleading standards for patent cases and (3) whether resolution as a matter of law is procedurally appropriate at this time.

### A. Legal Standard for Bringing a Motion to Dismiss in this District.

"A party may not disregard its obligation to comply with the Local Rules for its own convenience." *Mosaic Brands, Inc. v. The Ridge Wallet LLC*, No. 2:20-cv-04556-AB (JCx), 2020 WL 5640233, at *3 (C.D. Cal. Sept. 3, 2020).[1] Pursuant to L.R. 7-4, "The Court may decline to consider a motion unless it meets the requirements of L.R. 7-3 through 7-8." (L.R. 7-4). Local Rule 7-3 requires a moving party "must first contact opposing counsel to discuss thoroughly, preferably in person, the substance of the contemplated motion and any potential resolution." (L.R. 7-4). "The conference must take place at least 7 days prior to the filing of the motion." *Id.*

### B. Legal Standard for Pleading Patent Infringement.

To state a claim upon which relief can be granted, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but the complaint must include more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must set forth enough facts, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 570. A claim is facially plausible "when the . . . factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v.*

---

[1] Defendant knew of the Honorable Andre Birotte Jr.'s holding in *Mosaic Brands,* because Defendant selectively cites to that case in its motion to dismiss (Dkt. No. 12-1 at 6, 7) yet still proceeded to file its motion without first meeting and conferring with opposing counsel seven days prior. (Dkt. No. 12 at 1).

*Iqbal*, 556 U.S. 662, 678 (2009). Deciding whether a claim is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679.

### C. Legal Standards for Pleading Direct Infringement.

Liability for direct infringement arises when a party "without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent." 35 U.S.C. § 271(a). To plead direct infringement, a plaintiff must allege facts "that plausibly indicate that the accused products contain each of the limitations found in the claim." *TMI Sols. LLC v. Bath & Body Works Direct, Inc.*, 2018 WL 4660370, at *9 (D. Del. Sept. 28, 2018).

A plaintiff, however, "need not prove its case at the pleading stage." *Nalco Co. v. Chem–Mod, LLC*, 883 F.3d 1337, 1350 (Fed. Cir. 2018) (internal quotation marks and citations omitted). The complaint need only "place the potential infringer on notice of what activity is being accused of infringement." *Id.* at 1350.

### III. Argument.

Plaintiff provides four (4) independent reasons to deny Defendant's motion to dismiss. The Targus products accused of infringement are the Targus Computer Mouse and any similar products ('Products'). The Exemplary Product charted for infringement in Exhibit B to the Complaint is the "Targus Wireless RF Mouse," where the "RF" stands for "Radio Frequency." (Exhibit 3 at 1-6 (citing Targus Wireless RF Mouse User Guide, Exhibit 4)).

Figure 1 - Cover Page of Targus Wireless RF Mouse, Exhibit 4 at 1.

### A. Defendant's Motion Fails Because Plaintiff Agreed to Remove Allegation of Indirect Infringement.

On January 19, 2023, counsel for Defendant Targus wrote counsel for Plaintiff, Attorney Jay Johnson, asking to meet and confer related to Defendant's allegation that

Plaintiff's Complaint failed to state a claim based on three (3) general allegations: (1) "The complaint fails to plausibly allege direct infringement because it never addresses at least two limitations of the asserted patent claim;" (2) "The asserted patent claim is a hybrid device and method claim and thus invalid on its face;" and (3) "The unsupported, boilerplate allegations of indirect infringement are insufficiently pled." (**Exhibit 1** at 1).

On Monday, January 23, 2023, counsel for Plaintiff, Mr. Jay Johnson, responded asking for Defendant to "Please [1] identify the elements that you contend are not alleged; [2] cite the principle legal support for your assertion in number 2. [3] We are willing to drop the indirect infringement allegation for the time being." (**Exhibit 1** at 1).

Plaintiff agreed to remove its allegation of indirect infringement at the pleading stage, pursuant to the request of Defendant. (**Exhibit 1** at 1). To avoid doubt, Johnson recited, "We are willing to drop the indirect infringement allegation for the time being." (**Exhibit 1** at 1).

Thus, Defendant had plain statement in writing from Plaintiff's counsel Mr. Johnson that Plaintiff was "willing to drop the indirect infringement allegation." *Id.* Defendant's notice of motion indicates Defendant got this communication from Plaintiff on January 23, 2023. (Dkt. No. 18 at 1, lines 10-11). Defendant acknowledges that it did not respond until January 27, 2023, some four days later and then on January 30, 2023, knew "Plaintiff's lead counsel Mr. Johnson was unavailable due to serious medical issues, and that Plaintiff was transitioning this case to new lead counsel." (Dkt. No. 18 at 1, lines 14-17). Mr. Johnson passed away.

Because Plaintiff had agreed to remove the allegation of indirect infringement, the Court should not consider the issue of indirect infringement in Defendant's motion. It is a non-issue. There was never even a conflict on that issue. As explained below, the Court should deny Defendant's motion for failure to meet and confer. Notwithstanding, Plaintiff confirms it will amend its complaint to remove the allegation of indirect infringement within five (5) days of an order from this Court denying Defendant's motion.

### B. The Court Should Deny Defendant's Rule 12(b)(6) Motion Due to Defendant's Failure to Comply With Local Rule 7-3.

Defendant's motion should be denied pursuant to L.R. 7-4 due to Defendant's failure

to comply with L.R. 7-3. *Mosaic Brands*, 2020 WL 5640233 at *3 ("The Court admonishes Defendant for failing to meet and confer in good faith before filing its motion."). Pursuant to L.R. 7-4, "The Court may decline to consider a motion unless it meets the requirements of L.R. 7-3 through 7-8." (L.R. 7-4). Local Rule 7-3 requires a moving party "*must* first contact opposing counsel to discuss thoroughly, preferably in person, the substance of the contemplated motion and any potential resolution." (L.R. 7-4 (emphasis added)). "The conference *must take* place at least 7 days prior to the filing of the motion." *Id.*

Here, Defendant failed to participate in a conference seven (7) days prior to filing its motion. (Dkt. No. 18 at 1). The late Jay Johnson, attorney for Plaintiff, as part of his L.R. 7-3 obligations had started the meet and confer process with Defendant as early as January 23, 2023. Indeed, Plaintiff's Counsel had agreed to resolve Defendant's issue about the lack of facts supporting the allegation of indirect infringement in the operative complaint by simply removing the allegation altogether. (Exhibit 1 at 1).[2] Indeed, the Defendant acknowledges this by reciting "Plaintiff already agreed in email correspondence that it was 'willing to drop the indirect infringement allegation for the time being.'" (Dkt. No. 18-1, page 10, line 12-14).

But rather than continuing to meet and confer requirement under L.R. 7-3, Defendant proceeded to file its motion to dismiss. An administrator at Jay Johnson's law firm told Defendant's counsel about his serious illness and his imminent substitution by present counsel on or about January 30, 2023. (Dkt. No. 18 at 1, line 14-17). Sadly, Mr. Johnson's illness led to his passing. Instead of seeking leave to file a motion to dismiss without compliance with L.R. 7-3, Defendant filed its motion to dismiss without first seeking leave from the Court to proceed with filing this motion to dismiss on February 6, 2023. (Dkt. No. 18, at 1, lines 17-18). Defendant had a week to seek leave of the Court to get permission to proceed without compliance with L.R. 7-3, but did not do so. (Dkt. No. 12 at 1).

"The issues raised in the motion to dismiss likely could have been resolved, at least in

---

[2] True and correct copies of exhibits in support of Plaintiff's Opposition to Defendant's Motion to Dismiss are filed concurrently as attachments to the Declaration of Randall Garteiser in Support of Plaintiff's Opposition to Defendant's Motion to Dismiss, hereinafter ("Garteiser Decl.").

4

part, by a good-faith discussion between counsel." *Mosaic Brands*, 2020 WL 5640233, at *3. Here, the parties were making progress and had resolved already the indirect infringement pleading issue. Instead of rushing its Rule 12(b)(6) motion, Defendant could have simply requested another extension from plaintiff's local counsel for another 30-days like the parties had already agreed to do once before. (Dkt. No. 11). Given the health concerns of Plaintiff's lead counsel Jay Johnson, which Defendant's counsel admits it was aware of (Dkt. No. 12 at 1, lines 16-17), Plaintiff would have readily agreed to another extension of the deadline for Defendant to file its response to the Complaint, including a Rule 12(b)(6) motion. But Defendant did not ask for anotherd extension, even though it had just requested and obtained a 30-day extension at the docket entry last filed before it filed its Motion to Dismiss. (*Compare* Dkt. No. 12 at 1 *with* Dkt. No. 11 at 1).

Alternatively, Defendant could have simply answered the complaint with a denial to the allegations of infringement and later filed a Rule 12(c) motion at any time after it had properly complied with L.R. 7-3. Defendant did not pursue this option either.

At a minimum, Defendant should have asked for leave to waive the L.R. 7-3 meet and confer requirement before filing its motion. Defendant did not do this third option either.

Lastly, Plaintiff's replacement lead counsel after the death of Jay Johnson, met and conferred with Defendant to ask Defendant to withdraw its Rule 12(b)(6) motion due to Defendant's failure to meet and confer pursuant to L.R. 7-3. (Garteiser Decl., ¶ 2; Exhibit 2). Defendant refused to withdraw its motion.

Pursuant to L.R. 7-4, Plaintiff now asks that the Court deny Defendant's motion to dismiss for failure to comply with L.R. 7-3. Defendant's motion is premature as the parties plainly failed to complete their meet and confer process. On its face, Defendant's motion to dismiss seeks to rush to judgment factual issues involving claim construction and/or infringement, which are not proper at the pleading stage. Even a cursory look at the cases cited by Defendant quickly reveals they all involve a Section 101 Patentability issue or cases at the claim construction and/or summary judgment stage.

As such, Defendant's pleading motion had no chance of being granted *unless* Plaintiff

failed to file an opposition. Defendant knew "failure to file" an opposition would result in it being viewed as Plaintiff being "deemed to consent to the granting" of the motion to dismiss. (L.R. 7-12). Defendant made a strategic decision to push forward with filing its motion without meeting and conferring first and without first getting leave from the Court to waive the L.R. 7-3 requirement. *Mosaic Brands*, 2020 WL 5640233 at *3 ("The Court admonishes Defendant for failing to meet and confer in good faith before filing its motion.").

### C. Plaintiff's Complaint Meets the Pleading Standards.

"A complaint need not contain detailed factual allegations, but facts pleaded by a plaintiff must be 'enough to raise a right to relief above the speculative level.'" *Battery Conservation Innovations, LLC v. Corsair Gaming, Inc.,* Case No. 21-cv-07322-JST, *2 (J. Tigar) (N.D. Cal. April 14, 2022) (concurrently filed as **Exhibit 3**) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Here, the Complaint raises a right to relief based on direct patent infringement. (Dkt. No. 1 at ¶¶ 12-16). Starting with Paragraph 12 of the Patent Infringement Complaint explains that this "cause of action arises under the patent laws of the United States and, in particular under 35 U.S.C. §§ 271, *et seq*." (Dkt. No. 1 at ¶ 12). Paragraph 15 goes on to explain, "15. Upon information and belief, Defendant has infringed and continues to infringe one or more claims, including at least Claim 15, of the '158 Patent by manufacturing (as identified in the Claim Chart attached hereto as Exhibit B) a Computer Mouse that is an electronic **device** and **any similar products ('Products')**." *Id.* at ¶ 15. "The Computer Mouse is powered through a replaceable battery. The Computer Mouse includes motion sensing capabilities wherein, the Computer Mouse may automatically switch to sleep mode when no movement is detected, Defendant has infringed and continues to infringe the '158 patent either directly or through acts of contributory infringement or inducement in violation of 35 U.S.C. § 271." *Id.* at ¶ 15. At this stage, everything stated in the complaint is presumed valid. Here, there is no possible confusion by Targus as to whether a method or device is infringed because only the apparatus Claim 15 is asserted and the only Products are accused not any methods.

With regards to direct infringement specifically, the Complaint explains that Defendant

6

Targus direct infringes by having its employees internally test and use the Exemplary Products." Dkt. No. 1 at ¶ 16 ("Defendant also has and continues to directly infringe, literally or under the doctrine of equivalents, the Exemplary '158 Patent Claims, by having its employees internally test and use these Exemplary Products.").

The Plaintiff has provided sufficient notice to Defendant Targus that its making, selling and internal testing (using) its infringing product, Targus Wireless RF Mouse states a cause of action for direct infringement under Title "35 U.S.C. §§ 271, et seq." (Dkt. No. 1 at ¶ 12). *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

Thus, Defendant fails to meet its burden of proof and its motion should be denied. *See Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007) ("The Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-movant.").

### D. Plaintiff Adequately Pled Targus' Direct Patent Infringement.

To plead direct infringement, a plaintiff must allege facts "that plausibly indicate that the accused products contain each of the limitations found in the claim." *TMI Sols. LLC v. Bath & Body Works Direct, Inc.*, 2018 WL 4660370, at *9 (D. Del. Sept. 28, 2018). Here, Plaintiff provided Defendant with the patent-in-suit as Exhibit A to the Complaint and a patent infringement chart showing how Defendant's Exemplary Product infringes limitation by limitation claim 15 in Exhibit B to the Complaint. (Dkt. No. 1-2).

| Infringement Claim Chart for U.S. Pat. No. 9,239,158 vs. Targus("Defendant") | |
|---|---|
| **Claim 15** | **Evidences** |
| 15) A battery-conserving electronic device comprising: | Defendant (Targus) manufactures Computer Mouse that is an electronic device. The Computer Mouse is powered through a replaceable battery. The Computer Mouse includes motion sensing capabilities wherein, the Computer Mouse may automatically switch to sleep mode when no movement is detected.<br><br>When power is on, the mouse goes into "sleep mode" after 8 minutes of no use. To activate the mouse, touch the sensor strips on the side with your hand.<br><br>To save battery power, turn off the mouse while traveling or when you're not using it.<br><br>[image of mouse with "Low battery indicator" label]<br><br>Source: http://cdn.targus.com/web/us/downloads/pawm10_ug_revb.pdf |

Here, the preamble recites "A battery-conserving electronic device," which Plaintiff shows is met (even if not required as a preamble may not be even be considered a limitation) by explaining in detail that "Defendant (Targus) manufactures Computer Mouse that is an electronic device." (Dkt. No. 1-2 at 2). "The Computer Mouse is powered through a replaceable battery." (Dkt. No. 1-2 at 2). Plaintiff even provides direct quotes from Targus, such as, "When power is on, the mouse goes into 'sleep mode' after 8 minutes of no use." (Dkt. No. 1-2 at 2 (Exhibit 4) citing to the "Targus Wireless RF Mouse User Guide," as last visited on March 15, 2023, http://cdn.targus.com/web/us/downloads/pawm10_ug_revb.pdf.

The first claim limitation recites a device that has "a body including an opening for accessing an interior of the body." The claim chart includes quotes that indicate an opening, such as, "battery cover on the top of the mouse" and "Slide the battery cover back into position until it 'clicks.'" (Dkt. No. 1-2 at 4).

The second claim limitation recites "at least one Battery disposed in the body and configured for powering the device." (Dkt. No. 1-2 at 5). Plaintiff provides Targus evidence of this limitation is met by stating that the ability to "change the battery [ ] implies there must be at least one battery disposed in the body for powering the device." *Id.* Also, the cited source contains a specification section that explains the batteries being used as two (2) AAA Alkaline Batteries. (Exhibit 4 at 10).

The third element recites "a controller disposed in the body configured to determine if the body is in motion, wherein if the body is not in motion for a first predetermined period of time, the controller decouples the at least one battery from the electronic device to conserve energy in the at least one battery." (Dkt. No. 1-2 at 5-6). Plaintiff explains that the Targus Wireless RF Mouse User Guide recites that the mouse "automatically turns off when there is no motion detected for **8 minutes** and will turn on by moving the mouse." *Id.*

Defendant Targus alleges in its motion that Plaintiff fails to cite to "a controller disposed in the body configured to determine if the body is in motion" and also fails to explain how "the controller decouples at least one battery from the electronic device to conserve energy." (Dkt.

No. 18-1 at 4-6).

First, a plaintiff, "need not prove its case at the pleading stage." *Nalco Co. v. Chem–Mod, LLC*, 883 F.3d 1337, 1350 (Fed. Cir. 2018) (internal quotation marks and citations omitted). The complaint need only "place the potential infringer on notice of what activity is being accused of infringement." *Id.* at 1350. The patent itself explains in detail what a "controller" is in the context of (1) "detecting" if there is motion in the device and (2) "decoupling" at least one battery. These claim terms subject to claim construction, which is premature at the pleading stage. For notice pleading though, the '158 patent explains itself what these three claim terms mean, complete with diagrams. *See e.g.* Dkt. No. 1-1 at Col. 4, lines 6-15; Fig. 2).



Figure 2 of the '158 patent (Dkt. No. 1-1 at 3).

The patent explains that the "**controller** 224 controls the switch 222 based on various inputs to the controller 224 for activating or deactivating the illumination source. For example, on/off switch 114 provides an input signal to the controller 224 when the on/off

switch 114 disposed on the exterior of the body 102 is manually activated by a user. By **controlling the switch 222**, the controller 224 couples or **decoupled** the at least one battery to the illumination source 108." (Dkt. No. 1-1 at Col. 4, lines 6-15). With respect to a sensor to detect motion or motion sensor, it is depicted in Figures 2 and 3 of the '158 Patent. The specification of the '158 Patent explains that an "exemplary motion sensor is an accelerometer, which is a sensing element that measures acceleration; acceleration is the rate of change of velocity with respect to time." (Dkt. No. 1-1 at Col. 4, lines 23-26). The specification explains that it "is to be appreciated that although the context of the present disclosure was described in relation to a flashlight the teachings, techniques and principles of the present disclosure can be applied to other electronic device that employ at least one battery, for example, a radio, portable media player, mobile phone, laptop computer, tablet, etc." (Dkt. No. 1-1 at Col. 6, lines 17-24).

Objectively, when Defendant reads (1) the complaint, (2) the '158 patent (Exhibit A to the Complaint) and (3) claim chart (Exhibit B to the Complaint) it has more than sufficient notice that Plaintiff alleges Targus directly infringes each claim element of claim 15 of the '158 Patent through the making, using and selling of its Targus Wireless RF Mouse.

### E. The alleged *IPXL* Legal Issue Contains Underlying Factual Issues Making It Improper to be Decided at the Pleading Stage.

Defendant contends that the "Complaint fails to state a claim because asserted Claim 15 is invalid as indefinite. Defendant contends 'reciting both an apparatus and a method of using that apparatus renders a claim indefinite under section 112, paragraph 2.'" (Dkt. No. 18-1 at 7 (citing *Rembrandt Data Techs., LP v. AOL, LLC*, 641 F.3d 1331, 1339 (Fed. Cir. 2011) (quoting *IPXL Holdings, LLC v. Amazon.com, Inc.*, 430 F.3d 1377, 1384 (Fed. Cir. 2005). Both *Rembrandt* and *IPXL* are case holdings performed at the summary judgment stage after claim construction, not at the pleading stage. As such, Defendant's defense that the patent is invalid due to indefiniteness is a just that a defense, not a failure of Plaintiff under Rule 12(b)(6).

In the *IPXL* case, dependent claim 25 of U.S. Patent No. 6,149,055 patent, recites "The

system of claim 2 [including an input means] wherein the predicted transaction information comprises both a transaction type and transaction parameters associated with that transaction type, and *the user uses the input means* to either change the predicted transaction information or accept the displayed transaction type and transaction parameters." *IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377, 1384 (2005). The Federal Circuit held that "the user uses the input means" was not a proper element of device/apparatus claim and thus held the patent claim 25 of the '055 patent indefinite.

In contrast, here Claim 15 of the '158 Patent is an apparatus claim being asserted against accused device, the Targus RF Wireless Mouse. (Dkt. 1-2 at 1). It is not a method claim nor does it contain method elements. Claim 15 of the '158 Patent does not include a reference to a "user," or "the user" with no antecedent basis, as did the dependent claim 25 of the IPXL '055 patent that involved the "user" when there was no user in the independent system claim 2. Here, Claim 15 of the '158 Patent is not even a system, it is a device.

Undeterred, Defendant contends that "it is unclear whether infringement occurs when one creates a device where the controller can "decouple[] the at least one battery from the electronic device" and "activate[] the visual indicator," or whether infringement only occurs when the controller actually "decouples the at least one battery from the electronic device" and "activates the visual indicator." (Dkt. No. 18-1 at 9, lines 6-10). This is a ridiculous attorney argument with notably not one person of ordinary skill in the art even defined much less confused. Again, Claim 15 is an apparatus claim that is infringed when it is made, used or sold in the United States, as explained in the Complaint. *See e.g.* Dkt. No. 1 at ¶¶ 12-16.

Moreover, the defense will not prevail because the controller controls the switch that "decouples the at least one battery" as explained in the specification of the patent. (Dkt. No. 1-1 at Col. 4, lines 6-15). This is not method claim nor is it a method element contained within an apparatus claim. At the appropriate time in the case, claim construction, experts for both parties will provide the Court with the required factual underpinning required for the Court to understand what a person of ordinary skill in the art believes the patent claim elements should mean when read in light of the specification at the priority date of Claim 15 of the

'158 Patent.

Defendant failed to meet its burden under Rule 12(b)(6). The Court should deny the motion. *See TMI Sols. LLC v. Bath & Body Works Direct, Inc.*, 2018 WL 4660370, at *9 (D. Del. Sept. 28, 2018); *Nalco Co. v. Chem–Mod, LLC*, 883 F.3d 1337, 1350 (Fed. Cir. 2018) (holding the complaint need only "place the potential infringer on notice of what activity is being accused of infringement.").

## IV.     Conclusion.

Defendant's motion fails on multiple grounds identified above. The Court should deny this motion and sanction Defendant under L.R. 83-7 in the amount of Plaintiff's attorney fees an amount of $7500.00 for having to respond to Defendant's motion to dismiss. Plaintiff's counsel spent more than 20 hours preparing this opposition and a billable rate of at least $600 per hour is reasonable for an engineer, former law clerk, University of Texas School of Law Honors Graduate and 20-years of experience as a practicing attorney specializing in patent infringement litigation. (Declaration of Randall Garteiser, ¶ 8). At a minimum, Plaintiff's effort is worth more than $12,000.00, such that a sanction of $7500.00 is objectively reasonable. Plaintiff indicated that it would seek such sanctions if Defendant did not withdraw its motion. (Exhibit 2 at 3).

It is indefensible that Defendant knew that Plaintiff's original lead counsel was severely sick to the point that he was non-responsive to defendant's January 27, 2023 communication, and instead of obtaining another extension from local counsel as it previously had done, or in the alternative, requesting and getting leave from the Court to proceed with filing its motion without compliance with L.R. 7-3, Defendant created undue harm on Plaintiff by not allowing Plaintiff time to obtain new counsel and get that counsel brought up to speed. On January 30, 2023, an administrator that works with the late Jay Johnson informed Defendant's counsel of the unfortunate status of lead counsel for purposes of coordination, not for the Defendant to run to courthouse to try and get a "win" under L.R. 7-12 for failure of Plaintiff to file an opposition due to unavailability of its lead counsel. Such conduct promotes gamesmanship over common decency and compliance with the well-vetted

Local Rules of this District, including L.R. 7-3. Thus, a sanction of $7500.00 under L.R. 83-7(b) or L.R. 83-7(c) is appropriate. *See* L.R. 83-7.

With the Court's permission, Plaintiff shall file its amended complaint removing allegations of indirect infringement within five (5) days of the Court entering an order denying Defendant's motion to dismiss.

Respectfully Submitted,

Dated: March 15, 2023

/s/ *Randall Garteiser*
Randall T. Garteiser (CA State Bar No. 231821)
   rgarteiser@ghiplaw.com
Chris A. Honea (CA State Bar No. 232473)
   chonea@ghiplaw.com
**GARTEISER HONEA**
95 Third St., Fl. 2, San Francisco, CA  94103
119 W Ferguson, Tyler, TX  75702
Tel:  (888) 908-4400

Attorneys For Plaintiff

## **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Plaintiff certifies that this brief contains 4,344 words and is less than 25 pages, which complies with L.R. 11-6 and this Court's Standing Order.

/s/ *Randall Garteiser*
Randall T. Garteiser